UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| POWERMOUNT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 07-371-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| TECHEMET, L.L.P., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the parties' motions for leave to amend their pleadings. Plaintiff Powermount, Inc. ("Powermount") asks for leave to file a third amended complaint, adding an allegation of fraud [Record No. 55]. Defendant Techemet, L.L.P. ("Techemet") asks for leave to file a second amended answer, adding an affirmative defense based on the statute of limitations. [Record No. 58] For the reasons discussed below, the Court will grant both motions. As a result, additional discovery will be allowed and the trial date previously scheduled for January 2009 will be set aside.

**I.   BACKGROUND**

This suit arises out of business dealings between Powermount and Techemet. Powermount is a Pulaski County, Kentucky, corporation. Techemet is a limited liability

partnership located in Texas.  Powermount buys and sells catalytic converters,[1] along with the catalytic chemicals that are contained within them.  Techemet recovers palladium, rhodium, and platinum from those catalytic chemicals.  In September 2002, a disagreement arose in which Techemet claimed that Powermount had failed to deliver catalyst ordered in previous months, leading Techemet to threaten the deduction of $59,754.80 from its next payment to Powermount.  Paul Meece ("Meece"), president of Powermount, then contacted Bryce Ward ("Ward"), a partner at Techemet.  The characterization of their ensuing conversation is disputed.  Techemet claims that Meece called Ward "begging and pleading with him not to take an offset on that occasion for the past due catalyst."  [Record No. 52]  Techemet claims that Ward then agreed to delay the deduction based on Meece's promise to supply the past-due catalyst within the month.  Conversely, Powermount appears to contend that there was never any past-due catalyst, and that when Meece called Ward, it was to object to any deduction.  Powermount claims that Meece fully objected to the deduction as an error and was able to convince Ward to pay the full amount.

Following the parties' conversation, Powermount considered the issue of past-due catalyst "resolved."  [Record No. 38]  It is undisputed that Techemet did not take the threatened offset after the conversation between Meece and Ward.  Instead, it paid the full amount requested by Powermount.  It is also undisputed that Powermount did not deliver the contested past-due catalyst.

---

[1] A catalytic converter is a device used in engines to reduce the toxicity of certain gas emissions.  *See* Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/catalytic+converter (last visited Nov. 5, 2008).

It appears that the parties did not appear to conduct any further business with each other until a year later.  However, in September 2003, the two companies entered into another transaction.  Again, the parties dispute the characterization of this transaction: Techemet saw the transaction as a satisfaction of the past-due catalyst debt and Powermount saw the transaction as a completely new and distinct sale.  After receiving this shipment of catalyst, "Techemet notified Powermount a second time by fax that a portion of the money owed by Techemet to Powermount on the September 2003 shipment was being retained as an offset for the past due catalyst that Powermount had sold to Techemet, but had failed to deliver." [Record No. 52]  In other words, Techemet contends that it had not taken the deduction in 2002 because Meece had promised to deliver the past-due catalyst.  Since Meece had failed to do so, Techemet was taking the deduction now, with appropriate adjustments for the time that had passed.  Techemet contends that the deduction amount increased because of the fluctuations in the market, resulting in a $155,492.00 offset.  It is undisputed that Powermount delivered the full amount of catalyst due under the September 2003 agreement.

Powermount filed a Complaint [Record No. 1] with this Court in October 2007, demanding payment from Techemet in the amount of $155,492.00 under a theory of: (i) breach of contract or (ii) complaint for goods sold and delivered (the parties dispute the characterization of the claim).  Techemet asserted, *inter alia*, in its Answer and Counterclaim that "any and all defenses or conditions that may arise under K.R.S. § 355.2-301 *et. seq.* as a complete or partial bar to any recovery herein."  Powermount amended its Complaint [Record No. 35] to cure non-substantive jurisdictional information.  Both parties now ask the Court for leave to amend their

respective pleadings. Powermount seeks to add a claim of fraud while Techemet seeks to add a defense of statute of limitations.

## II. STANDARD OF REVIEW

Rule 15(a) of the Federal Rules of Civil Procedure governs the filing of amended pleadings. The rule provides that, where, as here, an answer to the complaint has been filed, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." FED. R. CIV. P. 15(a). The decision to grant a motion to amend lies within the sound discretion of the district court; however, the United States Supreme Court has instructed that Rule 15's permissive mandate "is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "This liberal policy of granting amendments is based in part on the belief that decisions on the merits should be made whenever possible, absent countervailing considerations." *Olech v. Vill. of Willowbrook*, 138 F. Supp. 2d 1036, 1040 (N.D. Ill. 2000) (*quoting Gregg Commc'ns Sys.*, Inc. v. Am. Tel. & Tel. Co., 98 F.R.D. 715, 720 (N.D. Ill. 1983)).

Generally, a plaintiff's motion for leave to amend should be granted absent a justifiable reason, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman*, 371 U.S. at 182. In applying these factors, the Sixth Circuit has repeatedly emphasized that "[d]elay by itself is not sufficient reason to deny a motion to amend." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001) (citations omitted). Further, "[n]otice and substantial prejudice to

the opposing party are critical factors in determining whether an amendment should be granted." *Id*.

### III.   ANALYSIS

Techemet did not explicitly assert a defense of statute of limitations in its original Answer and Counterclaim, although it contends that the defense is included in its "Ninth Defense", which "asserts any and all defenses or conditions that may arise under K.R.S. § 355.2-301 *et. seq.*" [Record No. 5] Techemet argues that "*et. seq.*" alerted Powermount and the Court to the existence of K.R.S. § 355.2-725, the statutory limitations period crucial to Techemet's defense. Techemet first explicitly brought up the defense in its Motion for Summary Judgment. [Record No. 49] Although failure to plead an affirmative defense usually results in waiver of that defense, the Court has broad discretion to allow a party to amend its answer accordingly. *See Phelps v. McClellan*, 30 F.3d 658 (6th Cir. 1994)

Powermount's original Complaint was an action for recovery of debt based either on breach of contract or sale of goods delivered. The requested amendment would add a claim for fraud. Techemet acknowledges that, even before filing its Complaint, Powermount had written to Techemet asserting possible contract and fraud claims, with a demand for $155,492.00. [Record No. 65] In addition, Powermount's fraud claim rests on facts that have already been presented in the record.

Both parties have presented evidence to show that neither would be surprised by introduction of the other's newly asserted claim. Both parties have had notice of the claims of fraud and statute of limitations through earlier communications. The Court also observes that,

although Powermount's fraud claim appears weak on its face, it is not futile.[2]  Finally, neither party is significantly prejudiced by the addition of the claims since many of the relevant facts have already been presented.  However, the Court will grant both parties additional time for discovery on the newly presented issues.

Accordingly, it is hereby

**ORDERED** that Plaintiff Powermount's Motion for Leave to File a Third Amended Complaint [Record No. 55] is **GRANTED**.  Defendant Techemet's Motion for Leave to File a Second Amended Answer [Record No. 58] is also **GRANTED**.  The Court adopts the following amended schedule for the disposition of this case:

(1)     No later than **January 19, 2009**, the parties shall complete any additional pretrial discovery.

(2)     The preliminary pretrial conference previously scheduled for November 19, 2008, is **CONTINUED** until a date to be reset by the United States Magistrate Judge.

(3)     The trial currently scheduled for January 6, 2009, is **CONTINUED** until **March 24, 2009**, beginning at the hour of **9:00 a.m.**, at the United States Courthouse in London, Kentucky.

This 12th day of November, 2008.

---

[2]     "A motion for leave to amend may be denied for futility 'if the court concludes that the pleading as amended could not withstand a motion to dismiss.'"  *Midkiff v. Adams County Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005); *see also Rose v. Hartford Underwriters Inc. Co.,* 203 F.3d 417, 420-21 (6th Cir. 2000) ("The test for futility, however, does not depend on whether the proposed amendment could potentially be dismissed on a motion for summary judgment; instead, a proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss.")



Signed By:
*Danny C. Reeves* DCR
United States District Judge